## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| —————————————————— )<br>ALVIN JACKSON, EMMANUEL JEAN )<br>JOSEPH, and XAVIER VEAL, )<br>               )<br>     Plaintiffs, )<br>               )<br>    v.            )<br>               )<br>AMERICAN AIRLINES, INC., )<br>               )<br>     Defendant. )<br>—————————————————— ) | Civil Action No. 24-CV-3818<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Alvin Jackson, Emmanuel Jean Joseph, and Xavier Veal hereby bring this action against American Airlines for race discrimination in violation of 42 U.S.C. § 1981.  By their attorneys, Public Citizen Litigation Group and Outten & Golden LLP, they allege the following facts:

### INTRODUCTION

1.      On January 5, 2024, American Airlines (herein referred to as "American") engaged in blatant and egregious race discrimination when it ejected Plaintiffs Jackson, Joseph, and Veal, along with five other Black male passengers, from American Flight 832 from Phoenix to JFK, without any valid reason, based solely on their race.

2.      Just prior to the scheduled takeoff of American Flight 832, a representative of American approached each Plaintiff, and, one by one, ordered them off the plane immediately, without explanation.  Plaintiffs complied and, once they reached the jet bridge, they saw that several other Black men were also being removed from the plane.  In fact, it appeared to Plaintiffs that American had ordered ***all*** of the Black male passengers on Flight 832 off the plane.

3.      Once Plaintiffs, along with the other Black male passengers, exited the plane, they demanded an explanation.  Representatives of American told them that they were ordered off the plane because of a complaint about body odor.  Plaintiffs were not told that they personally had body odor, and in fact none of the Plaintiffs had offensive body odor.  When Plaintiffs pointed out that it looked like they had been singled out because they were Black, at least one of the American representatives said,  "I agree. I agree."  Plaintiffs were told that they and the other Black male passengers would all have to be rebooked on another flight.

4.      During the time Plaintiffs were stuck at the gate waiting to be rebooked, they continued to complain about the blatant race discrimination they were experiencing.  After approximately an hour, and only after determining that there were no available American flights that evening on which the men could be rebooked, American reversed course and informed Plaintiffs and the other Black male passengers that they could reboard Flight 832 and fly to JFK. Plaintiffs then had to reboard the plane and endure the stares of the largely white passengers who viewed them as the cause of the substantial delay.  They suffered during the entire flight home, and the entire incident was traumatic, upsetting, scary, humiliating, and degrading.

5.      Unfortunately, American's discriminatory treatment of Plaintiffs was not an isolated instance.  In fact, American has a documented history of frequently subjecting Black passengers (and other passengers of color) to differential treatment and bigotry.[1]  American's

---

[1]  *See, e.g.,* Jonathan Franklin, *American Airlines Passenger Alleges Discrimination Over Use of First-class Restroom*, NPR (Apr. 25, 2024), https://www.npr.org/2024/04/25/1245583048/american-airlines-racial-discrimination-allegation-bathroom; Amanda Starrantino, *Black Musician Says he was Falsely Accused of Trafficking his Own Children on American Airlines Flight*, CBS NEWS (Sept. 27, 2023), https://www.cbsnews.com/losangeles/news/black-musician-accused-of-trafficking-his-own-children-aboard-american-airlines-flight/; Kyle Arnold, *American Airlines Faces a Flurry of Racial Discrimination Complaints*, AVIATION PROS (Jan. 24, 2023),

pattern of discriminating against Black passengers was so blatant that in 2017 the NAACP issued

a travel advisory warning Black travelers that they could be subjected to "disrespectful,

https://www.aviationpros.com/airlines/news/21293384/american-airlines-faces-a-flurry-of-racial-discrimination-complaints; Mirna Alsharif, *Sha'Carri Richardson Says she was Removed From an American Airlines Plane After Arguing with a Flight Attendant*, NBC NEWS (Jan. 21, 2023), https://www.nbcnews.com/news/shacarri-richardson-says-was-removed-american-airlines-plane-arguing-f-rcna66844; Haaziq Madyun, *Former NFL Players Claim they were Racially Profiled on American Airlines Flight to SF*, KRON 4 (Jan. 13, 2023), https://www.kron4.com/news/bay-area/exclusive-former-nfl-players-claim-they-were-racially-profiled-on-american-airlines-flight-to-sf/; David Dwork & Cody Weddle, *Passenger Speaks to Local 10 After NFL Star Odell Beckham Jr. Escorted off Airplane at Miami International Airport*, DALLAS MORNING NEWS (Nov. 27, 2022), https://www.local10.com/news/local/2022/11/27/police-escort-nfl-star-odell-beckham-jr-off-airplane-at-miami-international-airport/; Kate Duffy, *Passenger Accuses American Airlines of Racism, Saying it Barred her from Boarding a Delayed Flight Because of her Tone of Voice*, BUSINESS INSIDER (Aug. 10, 2022), https://www.businessinsider.com/american-airlines-passenger-banned-delayed-flight-tone-voice-2022-8; David Hodges, *Black American Airlines Passenger Says she was Called Racial Slur Before Being Kicked Off Flight*, WBTV (June 30, 2020), https://www.wbtv.com/2020/06/30/black-american-airlines-passenger-she-was-called-racial-slur-before-beng-kicked-off-flight/; Chris Isidore, *Passengers Alleging Racial Discrimination Sue American Airlines Over Black Man's Removal From Flight*, CNN (June 22, 2020), https://www.cnn.com/2020/06/22/business/american-airlines-lawsuit-racial-discrimination/index.html; David K. Li, *Two Muslim Men From Texas Claim they were Racially Profiled on American Airlines Flight*, NBC NEWS (Sept. 20, 2019), https://www.nbcnews.com/news/us-news/two-muslim-men-texas-claim-they-were-racially-profiled-american-n1057051; Janice Gassam Asare, *American Airlines Accused of Racial Profiling - - Learning Lessons for Other Airlines*, FORBES (July 12, 2019), https://www.forbes.com/sites/janicegassam/2019/07/12/american-airlines-accused-of-racial-profiling-learning-lessons-for-other-airlines/?sh=58ca6da82d3b; Yesha Callahan, *Black Passenger Says American Airlines Forced Her to Give Up Her 1st-Class Seat but Let Her White Friend Remain*, THE ROOT (May 9, 2017), https://www.theroot.com/how-american-airlines-forced-black-passenger-to-give-up-1795045431; Mark Joseph Stern, *Remember When American Airlines Called the Police to Force NAACP's Rev. William Barber Off a Plane?*, SLATE (Apr. 23, 2017), https://slate.com/news-and-politics/2017/04/american-airlines-calls-police-to-force-naacps-william-barber-off-plane.html; Rania Aniftos, *Jason Derulo Blames Racial Profiling for Heated Incident on American Airlines Flight*, BILLBOARD (Feb. 8, 2017), https://www.billboard.com/music/pop/jason-derulo-racial-profiling-american-airlines-police-7685274/; Frances Kai-Hwa Wang, *Brooklyn Men Allege Discrimination, File $9 Million Lawsuit After American Airlines Encounter*, NBC NEWS (Jan. 21, 2016), https://www.nbcnews.com/news/asian-america/brooklyn-men-allege-discrimination-file-9-million-lawsuit-after-american-n501476; *American Airlines Sued Over Alleged Discrimination*, CBS NEWS (Jan. 19, 2016), https://www.cbsnews.com/news/four-brooklyn-men-sue-american-airlines-after-being-booted-from-flight/.

discriminatory or unsafe conditions" on the air carrier and stating that "[t]he growing list of incidents suggesting racial bias reflects an unacceptable corporate culture and involves behavior that cannot be dismissed as normal or random."  The treatment that Plaintiffs experienced is, upon information and belief, part of American's pattern and practice of discrimination against Black passengers.

6.     In this lawsuit, Plaintiffs seek declaratory relief, just compensation for their pain and suffering, a punitive damage award sufficient to deter American from discriminating against Black passengers in the future, and an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves a federal question under 42 U.S.C. § 1981.  Declaratory and equitable relief is authorized by 28 U.S.C. §§ 2201, 2202, and 1343.

8.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in the Eastern District of New York.

9.     This Court has personal jurisdiction over American because it regularly conducts business in this judicial district.

## PARTIES

10.     Plaintiff Alvin Jackson, who is Black, resides in Brooklyn, New York.  He is a professional musician and music teacher.

11.     Plaintiff Emmanuel Jean Joseph, who is Black, resides in Brooklyn, New York. He is a professional actor.

12.     Plaintiff Xavier Veal, who is Black, resides in Queens, New York.  He is a production assistant who works on commercial television sets.

13.     Defendant American Airlines, Inc. is a United States-based airline incorporated in Delaware with headquarters in Fort Worth, Texas.  It regularly and systematically conducts business in the Eastern District of New York.

## FACTS

14.     Before January 5, 2024, Plaintiffs did not know each other and had never spoken to each other.

15.     In late 2023, Plaintiffs each traveled to California for different reasons.  Mr. Jackson went to California to tour with his band.  Mr. Joseph went to Los Angeles to spend the holidays with friends.  Mr. Veal helped a friend move from Brooklyn to Los Angeles.

16.     All three Plaintiffs purchased an airline ticket to fly on January 5, 2024, from Hollywood Burbank Airport in California to JFK Airport in New York.  The scheduled flight involved a layover and change of planes at Sky Harbor International Airport in Phoenix, Arizona.

17.     On January 5, after Plaintiffs landed in Phoenix, each proceeded to the departure gate and boarded American Flight 832.  Flight 832 was originally scheduled to depart Phoenix at 4:17 PM and arrive at JFK at 10:59 PM.

18.     Plaintiffs settled in their ticketed seats.  They were not seated together.

19.     Right after the pilot announced an expected early arrival time, an American employee approached Plaintiffs, one by one, and without explanation, ordered each of them off the plane.  The American employee skipped over rows of other passengers in selecting Plaintiffs for removal.  Each Plaintiff complied with the directive.

20.     As they were exiting the plane to the jet bridge, Plaintiffs noticed that a number of other Black men exited the plane as well, and it appeared to Plaintiffs that American had ordered

all of the Black male passengers off the plane.  In total, American ordered eight Black men off the plane.

21.     Plaintiffs' experience of being ejected from the plane, along with the other Black males, for no valid reason and without explanation, was frightening, disorienting, and extremely upsetting.  Plaintiffs' experience of having to walk through the center aisle and exit the plane, while the crew and other mostly white passengers looked on, was humiliating, degrading, and deeply traumatizing.

22.     As soon as all eight Black men had exited the plane, and while standing on the jet bridge, Plaintiffs demanded an explanation.  An American representative stated that they had been removed from the plane because someone had complained about an offensive body odor.

23.     American did not specifically accuse any of the Plaintiffs of having offensive body odor and in fact none had offensive body odor.

24.     Plaintiffs told the American representatives with them that it looked to them like "discrimination" and that American was throwing them off the plane because they were Black.  One American representative responded, "I agree. I agree."

25.     Plaintiffs were instructed to proceed down the jet bridge to the gate area.  They complied.

26.     Once Plaintiffs arrived at the gate, a different American representative told them that the complaint about offensive body odor had come from a white male flight attendant.

27.     When Mr. Joseph stated that the white male flight attendant had treated him differently "just because of the color of [his] skin," an American representative responded, "Correct. I do not disagree with you."

28.     While Plaintiffs were waiting at the gate, they were told that they and the other Black male passengers would all have to be rebooked on another flight.  Then, after a while, an American representative told Plaintiffs that they could not get them on any alternate American flight to JFK that evening.

29.     Also while Plaintiffs were at the gate, the pilot announced to the mostly white remaining passengers on the plane that the delay was caused by a concern about body odor.

30.     Throughout the time they were at the gate, Plaintiffs continued to complain that they were being discriminated against.  After approximately one hour, with Plaintiffs continuing to press for answers and to demand to be permitted to reboard the flight, American changed course and told them and the other Black men that they would be permitted to reboard the aircraft.

31.     At multiple times during the incident, Plaintiffs asked the American representatives with whom they were speaking for their names.  Multiple American representatives refused these requests.  One representative deliberately concealed her name tag; she took Mr. Joseph's cell phone number and promised to contact him, but never did.

32.     Plaintiffs ultimately agreed to reboard the flight, notwithstanding significant misgivings and the humiliation from their initial removal from the flight, because each of them needed to get home that evening.

33.     American directed Plaintiffs to return to their original seats.  Mr. Joseph requested a different seat, to avoid having to interact with the white male flight attendant.  There was an available seat in first class that American could have given to Mr. Joseph.  Instead, American staff upgraded an Asian woman to first class, and then allowed Mr. Joseph to take her assigned seat in coach.

34.     Flight 832 departed Phoenix almost an hour late, at 5:09 PM.

35.     Upon information and belief, during the flight, Mr. Jackson and Mr. Veal were attended by the white male flight attendant who had initiated the discriminatory removal.  That flight attendant continued to behave in a rude and discriminatory manner.

36.     Throughout the flight—from the moment of their reboarding, in each interaction with the white male flight attendant, and continuing until landing—Plaintiffs experienced profound feelings of embarrassment, humiliation, anxiety, anger, and distress.  The act of returning to their seats after the unwarranted delay, navigating past the predominantly white passengers, several of whom eyed them with anger and undue suspicion, compounded their humiliation.

37.     The flight arrived at JFK at approximately 11:30 pm, thirty minutes after its scheduled arrival time.  The delay was caused solely by American's racially discriminatory decision to eject the Black male passengers from the plane.

38.     Upon landing at JFK but before deboarding, Mr. Jackson asked to speak with an American employee about the incident.  American refused, and instead rushed him off the plane and told him he could speak to an American representative inside the terminal.  That was a lie: By the time the passengers had deplaned, it was almost midnight, and there were no American employees available at JFK to speak with him.

39.     American's decision to remove Plaintiffs from the flight was not based on any legitimate rationale.  It was an act of blatant discrimination, and it was done with malice and in flagrant disregard of Plaintiffs' rights.  Indeed, it is near impossible to imagine that American would ever treat white customers in a similar manner.  But for Plaintiffs' race and skin color, American would not have removed them from the plane.  Plaintiffs contracted with American

but were subjected to disparate—and substantially worse—terms and conditions of contract than white passengers.

40.     As a direct consequence of this flagrant discrimination, Plaintiffs have suffered greatly.  This was a traumatizing event.  It was scary, extremely frustrating, embarrassing, degrading, and humiliating.  It is upsetting to the Plaintiffs to this day.

41.     Moreover, the incident did not just inflict immediate distress; it also resurfaced and intensified emotional trauma from past encounters with racism and discrimination. American's actions not only revisited these old wounds but also deepened them, exacerbating Plaintiffs' suffering and sense of alienation.

## CLAIM FOR RELIEF

42.     Plaintiffs hereby repeat, reiterate, and re-allege each and every allegation in each of the preceding paragraphs, as though fully set forth herein.

43.     42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens …."  42 U.S.C. § 1981(a).  Under the statute, the phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

44.     When Plaintiffs contracted with American for passage on Flight 832, they had a right to be treated equally to white passengers and without discrimination—a right which American violated.  Plaintiffs were subjected to discriminatory, and substantially worse, performance, benefits, privileges, terms, and conditions of their contract with American, solely due to their race and color.

45.     As a direct and proximate result of American's intentional discrimination in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress for which they are entitled to an award of damages.

46.     American's unlawful and discriminatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiffs are entitled to an award of punitive damages.

## PRAYER FOR RELIEF

Plaintiffs respectfully seek:

(1) A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate 42 U.S.C. § 1981;

(2) An award of compensatory damages in an amount to be determined at trial to compensate each Plaintiff for the discrimination they experienced, to including damages for fear, humiliation, embarrassment, mental pain, suffering, and inconvenience;

(3) An award of punitive damages in an amount to be determined at trial that would punish Defendant for its malicious, willful, wanton, callous, and reckless conduct and effectively deter Defendant from engaging in similar conduct in the future;

(4) An award of prejudgment interest on all amounts due;

(5) An award of reasonable attorneys' fees and costs.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues of fact and damages stated herein.

Dated: May 29, 2024

Respectfully submitted,

_____
Lindsay M. Goldbrum
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(347) 390-2119
lgoldbrum@outtengolden.com

Susan E. Huhta (*Pro Hac Vice* application to be filed)
Outten & Golden LLP
1225 New York Avenue NW, Suite 1200B
Washington, DC 20005
(202) 847-4414
shuhta@outtengolden.com

Michael T. Kirkpatrick (*Pro Hac Vice* application to be filed)
Lauren E. Bateman (*Pro Hac Vice* application to be filed)
Public Citizen Litigation Group
1600 20th Street NW,
Washington, DC 20009
(202) 588-7714
mkirkpatrick@citizen.org
lbateman@citizen.org

*Counsel for Plaintiffs*